UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DYE,

Petitioner,

Case No. 2:19-cv-12118
Hon. Nancy G. Edmunds

v.

SCOTT SPRADER,

Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) GRANTING CERTIFICATE OF APPEALABILITY WITH RESPECT TO PART OF PETITIONER'S THIRD CLAIM, AND (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

David Dye ("Petitioner") filed this habeas case under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of armed robbery, MICH. COMP. LAWS § 750.529; first-degree home invasion, MICH. COMP. LAWS § 750.110a(2);  felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; larceny in a building, MICH. COMP. LAWS § 750.360; assault with a dangerous weapon, MICH. COMP. LAWS § 750.82; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. Petitioner was sentenced as a third-time habitual felony offender to a composite controlling sentence of 32-to-57 years' imprisonment.

Petitioner raises six claims in his habeas petition: (1) insufficient evidence was presented at trial to establish Petitioner's identity as one of the perpetrators, (2) the trial court erred in scoring the sentencing guidelines based on facts not proven beyond a reasonable doubt, (3) Petitioner's trial counsel was ineffective for failing to investigate and call three defense witnesses at trial, (4) Petitioner's counsel was ineffective for failing to challenge a biased juror, (5) Petitioner's counsel

was ineffective for failing to object to admission of a photograph of the victim's living room, and (6) the cumulative effect of errors by Petitioner's counsel entitle him to habeas relief.

Because all of Petitioner's claims are without the Court will deny the petition. The Court will, however, grant Petitioner a certificate of appealability with respect to the portion of his third claim asserting that his counsel was ineffective for failing to call Ashanti Stewart as a defense witness. The Court will also grant leave to appeal in forma pauperis.

## I. Background

The charges against Petitioner involved allegations that he and another man broke into the victim's home and robbed her at gunpoint.

Tiffanie Douglas testified that the incident occurred at her Detroit home on July 29, 2015. (ECF No. 9-7, PageID.519.) At about 2:00 a.m. that night she was asleep on the couch in her living room when her dog started growling. (Id., PageID.523-526.) Two men were attempting to enter her home through a front window, and one was holding a gun. (Id., PageID.527-528.)

The man with the gun told her to get up. (Id., PageID.527.) Tiffanie recognized Petitioner as the other man. (Id., PageID.527-528.) She recognized Petitioner as someone she knew through her boyfriend, and she had seen him five or six times in the past. (Id., PageID.530-531.) In fact, Petitioner had entered her house unannounced the day before the incident looking for Tiffanie's boyfriend, "Gee," who was not home. (Id., PageID.530-531.)

As he had done earlier, Petitioner again asked Tiffanie where Gee was, and she told him that he was not home. (Id., PageID.530-531.) The man with the gun directed her to open her door, and she did so because he was pointing the gun at her. (Id., PageID.532.) The man with the gun entered through the door, grabbed her by the hair, put the gun to her head, and walked her into the dining room. He demanded that she tell him where the money and guns were. (Id., PageID.533.)

She could only direct the man to a bag of marijuana on the dining room table, and the man took it. (Id., PageID.533-534.) Meanwhile, Tiffanie saw Petitioner take her television, a video game system, and a DVD player out of her living room and take them outside. (Id., PageID.534.)

The other man walked her through the rooms in the house looking for valuables. (Id., PageID.538.) She was afraid that she would be shot or sexually assaulted. (Id., PageID.539.) Petitioner told her, "Since Gee wanna fuck other n*****'s b*****s, then take your clothes off." (Id., PageID.540.) She complied, and she was told to sit on the floor of the bathroom, or she would be shot. (Id., PageID.542.) The man with the gun returned to the bathroom and demanded the passcode for her cellphone. (Id., PageID.542.) While she was giving him the code, she saw Petitioner loading the television into his vehicle, which she described as a silver Toyota Solara. (Id., PageID.543.) Tiffanie testified that the Petitioner's girlfriend owned a silver Toyota Solara. (Id., PageID.567.)

After the men left Tiffanie ran to a gas station where she called her boyfriend and brother, and they picked her up and took her to the police station. (Id., PageID.546-547.) On August 1, 2015, she identified Petitioner by name at the police station from a photograph. (Id., PageID.556.) She was never able to identify the other man. (Id., PageID.556.)

Detroit Police Officer Donnell Holyfield testified that on July 29, 2015, he was working at the police station when at about 3:30 a.m. Tiffanie Douglas arrived to complain of a break-in at her house. (Id., PageID.577-578.) He said that she told him that the two perpetrators were looking for money, but they took her television, videogame, and phone when she could not produce money. (Id., PageID.579.) She gave Ofc. Holyfield Petitioner's name and a physical description. (Id., PageID.580.)

Detroit Police Department Detective Harold Lewis testified that on August 1, 2015, he interviewed Tiffanie Douglas. (Id., PageID.583-584.) She identified Petitioner by name after he showed her a photograph. (Id., PageID.584-587.) Det. Lewis used a single photo of the suspect and not an array of several photos because the victim knew the perpetrator. (Id., PageID.587.)

Wayne County Sheriff's Deputy Ki Sobol testified that he monitors the phone system provided to inmates at the Wayne County Jail. (Id., PageID.589-590.) He stated that he made recordings of Petitioner's calls from jail. (Id., PageID.592.) A call made by Petitioner on March 19, 2016, to his grandmother was played for the jury. (Id., PageID.595-596.)

Fay Carter testified in the defense case that Petitioner was her grandson. (Id., PageID.615-616.) She testified that he spent the entire day of July 28, 2015, at her home in Westland. (Id., PageID.617-618.) She said that he spent the night of July 28-29, 2015, with his children at her house as well. (Id., PageID.618.) Ms. Carter testified that Petitioner's son's birthday was on July 30, and Petitioner and his children were at her house to celebrate. (Id., PageID.618.)

Ms. Carter testified that while Petitioner stayed at her house, he did not have access to a vehicle. (Id., PageID.618.) She testified that Petitioner was the one who took care of the children, and that he did not leave the house. (Id., PageID.618-619.) Ms. Carter testified that the children slept in the bedrooms, and she and Petitioner slept on the living room floor. (Id., PageID.619.) She said that when Petitioner woke up on July 29, 2015, he made breakfast for his children. (Id., PageID.620.)

Ms. Carter initially denied speaking to Petitioner regarding his case. (Id., PageID.627-628.) But she acknowledged that she spoke to him regarding a potential witness, Tia, on the phone from jail. (Id., PageID.628.) The prosecutor played the recorded jail call, during which Ms. Carter told Petitioner that she had talked with Tia, but Tia did not know what she was supposed to say. (Id.,

PageID.628-630.) Tia told Ms. Carter that she was unable to testify for Petitioner. (Id., PageID.628-630.)

Based on this evidence, the jury found Petitioner guilty of the offenses indicated above.

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate counsel filed a brief on appeal raising two claims:

I. Did the insufficient evidence presented during the defendant-appellant's trial on the issues of lack of presence and identity, to support the jury's verdicts of guilty beyond a reasonable doubt of one count each of armed robbery, first degree home invasion (FDHI), felon in possession of a firearm while ineligible (felon in possession), larceny in a building (LIB), assault with a dangerous weapon (felonious as sault) and possession of a firearm in the commission of a felony (felony firearm), constitute the denial of the due process of law guaranteed by the Fifth Amendment to the United States Constitution?

II. Does the sentence imposed upon the defendant-appellant, of from thirty years to fifty-five years in prison, pursuant to his conviction for one count of armed robbery—based upon facts not proven to his jury beyond a reasonable doubt— constitute a violation of the right to a trial by jury guaranteed by the Sixth Amendment to the United States Constitution?

Petitioner also filed a supplemental pro se brief raising claims of ineffective assistance of trial counsel, as well as a motion to remand the case to the trial court for an evidentiary hearing to support his claims:

I. Defendant Dye was denied his constitutional right to effective assistance of counsel, where trial counsel failed to investigate other alibi witnesses, res gestae witnesses, and generally failed to investigate defendant's case, thereby denying defendant due process and a fair trial. U.S. Const. Ams VI, XIV; Const 1963, art 1, §§ 17, 20.

II. Defendant was denied the effective assistance of counsel, where trial counsel failed to strike a potential biased juror, which denied defendant due process and a fair trial. U.S. Const. Ams VI. XIV.

III. Defendant was denied the effective assistance of counsel, where counsel failed to investigate, which led to the admission of evidence without authentication or proper foundation, which denied defendant due process of law and a fair trial. U.S. Const. Ams. VI. XIV.

IV. The cumulative effect of counsel's errors prejudiced defendant and his conviction/sentence should be reversed, or alternatively remand should be ordered for a *Ginther* hearing to establish a testimonial record on the claims of ineffective assistance of counsel and a new trial ordered.  U.S. Const. Ams. VI. XIV.

The Michigan Court of Appeals denied the motion for remand, "for failure to persuade the Court of the necessity of a remand at this time." (ECF No. 9-12, PageID.820.) The Court subsequently affirmed Petitioner's conviction in an unpublished opinion. *People v. Dye*, No. 334062, 2017 WL 6390062 (Mich. Ct. App. Dec. 14, 2017). Petitioner appealed to the Michigan Supreme Court, raising only the claims that he presented in his supplemental brief. The Michigan Supreme Court denied leave to appeal by form order. *People v. Dye*, 915 N.W.2d 461 (Mich. 2018)(Table).

## II. Standard of Review

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. Id. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III. Analysis

A. Sufficiency of the Evidence

Petitioner first asserts that constitutionally insufficient evidence was presented at trial to prove his identity as the perpetrator of the crimes. After reciting the familiar standard governing sufficiency-of-the-evidence claims, the Michigan Court of Appeals rejected the claim on the merits:

> There was sufficient evidence for a reasonable jury to conclude that defendant was one of the perpetrators of these crimes. Tiffanie Douglas testified that she knew defendant personally as the father of the children of her boyfriend's sister. She saw him on five or six occasions before the incident in question. Douglas saw defendant in the afternoon on July 28, 2015, when he arrived unannounced at her home on Montrose Street in Detroit and asked about the location of "Gee" (a nickname for Douglas's boyfriend, Greg Mack). Defendant returned to Douglas's house at 2:00 a.m. on July 29, 2015, and, again, asked where Gee was. Douglas instantly recognized defendant when he returned. Douglas testified that she saw defendant commit these crimes. Douglas saw defendant, armed with a gun, enter her home halfway through a window in the living room. Douglas saw defendant unplug her television and Xbox and take the Xbox out of the house. She also saw defendant load her television into a vehicle. Douglas never regained possession of these items. In addition, defendant told Douglas to take off her clothes while the unknown man who accompanied him pointed his gun at her. When Douglas went to the police station, she provided Officer Donnell Holyfield with defendant's name.
>
> Defendant argues that Douglas's testimony was inconsistent in that she initially told police that defendant was clean shaven, but after seeing a photograph from a detective in which defendant had a mustache, she said that he had a mustache. However, when reviewing the evidence, conflicts in fact are to be viewed in the light most favorable to the prosecution. *People v. Wolfe*, 440 Mich. 508, 515 (1992), amended 440 Mich. 508 (1992). Further, it is up to the jury to weigh the evidence presented and evaluate the credibility of witnesses. *Kanaan*, 278 Mich. App. at 619. Douglas testified that she could not stop crying at the police station when she arrived. In her initial report to Officer Holyfield, she told him that defendant was clean shaven. However, Douglas gave the police a written statement on July 29, 2015, at 1:08 p.m., in which she described defendant as having a mustache. It was not until August 1, 2015, that Detective Harold Lewis presented

Douglas with the picture of defendant with a mustache. Douglas testified that she gave the written statement that defendant had a mustache before seeing the picture. Thus, defendant's argument mischaracterizes Douglas's testimony. Douglas's testimony demonstrates that she said that defendant had a mustache before she was presented with the picture. We reiterate, at any rate, that conflicts in the evidence are weighed in favor of the prosecution. The evidence in the record was sufficient to justify a rational trier of fact in finding defendant guilty beyond a reasonable doubt of the crimes.

*Dye*, 2017 WL 6390062, at *9 (footnotes omitted).

This decision was reasonable. The relevant standard for sufficiency of the evidence claims is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Habeas relief is warranted on a sufficiency of the evidence claim only if the state court's application of this standard was unreasonable. See 28 U.S.C. § 2254(d)(2).

The analysis here is straightforward. The victim identified Petitioner as one of the men who broke into her home and robbed her. This was not a case of stranger identification. The victim saw Petitioner earlier in the day when he came to her house looking for her boyfriend, and she testified she had seen him on five or six occasions in the past. The question whether to believe the victim's identification testimony beyond a reasonable doubt was one for the jury to decide, and it is beyond the scope of review for a court reviewing the sufficiency of the evidence. The court may not "reweigh the evidence or redetermine the credibility of the witnesses" because such an assessment "is generally beyond the scope of federal habeas review of sufficiency of evidence claims." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). The claim is therefore without merit.

B. Sentencing Guidelines

Petitioner's second claim asserts the trial court erroneously scored the sentencing guidelines based on facts not proven beyond a reasonable doubt in violation of the Sixth Amendment.

First, claims that a state trial court incorrectly scored, calculated, or applied state sentencing guidelines present questions of state law. They are therefore not cognizable in federal habeas corpus proceedings. See *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003)("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000)(alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Petitioner's Sixth Amendment claim applies to mandatory sentencing guidelines but not to the advisory guidelines under which Petitioner was sentenced. Any fact that increases the mandatory minimum sentence for a crime must be submitted to a jury. *Alleyne v. United States*, 570 U.S. 99, 111-12 (2013). In *People v. Lockridge*, 498 Mich. 358 (Mich. 2015), the Michigan Supreme Court held that under *Alleyne* the mandatory application of Michigan's sentencing guidelines was unconstitutional. To resolve the problem, the Michigan Supreme Court adopted the Supreme Court's remedy in *United States v. Booker*, 543 U.S. 220 (2005), and made Michigan's guidelines advisory instead of mandatory. See *id*. Petitioner was sentenced on May 11, 2016, after *Lockridge* was decided and the guidelines were made advisory. The application of advisory sentencing guidelines does not violate the Sixth Amendment. *Booker*, 543 U.S. at 233 (2005). Petitioner is therefore not entitled to habeas relief on this claim.

C. Ineffective Assistance of Counsel

Petitioner's remaining four claims assert that he was denied the effective assistance of trial counsel. He asserts that his counsel failed to call three defense witnesses to support his alibi claim, failed to move to strike a biased juror, and failed to object to the admission of a photo depicting the television in the victim's living room before it was stolen. Petitioner also claims the cumulative impact of counsel's errors deprived him of a fair trial.

To prevail on this claim Petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A habeas petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted).

1. Failure to Call Witnesses

Petitioner's third claim asserts that his counsel was ineffective for failing to investigate and call as defense witnesses three individuals: Ashanti Stewart, Tia S. Mack, and April Hicks. The claim was presented to the Michigan Court of Appeals in Petitioner's supplemental pro se brief,

and in his pro se motion to remand. The state court denied the remand, and then denied the claim

on the merits:

> Defendant argues that he was denied the effective assistance of counsel because defense counsel did not interview and/or call as witnesses Ashanti Stewart, Tia Mack (Tia), or April Hicks. Defendant argues that Stewart would have testified that defendant did not have her vehicle[7] on July 28, 2015, Tia would have testified that defendant had their children over the dates in question, and Hicks would have testified that defendant was in Westland on the night in question. "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy ...." *Horn*, 279 Mich. App. at 39. Such matters of trial strategy are not second-guessed by this Court. *Id*. The failure to call or question witnesses constitutes ineffective assistance of counsel only when it deprives the defendant of a "substantial defense." *People v. Russell*, 297 Mich. App. 707, 716 (2012) (quotation marks and citation omitted). "A defense is substantial if it might have made a difference in the outcome of the trial." *People v. Hyland*, 212 Mich. App. 701, 710 (1995), vacated in part on other grounds 453 Mich. 902 (1996).

> First, defendant has not factually supported his claims with citations to the lower-court record.[8] *Armstrong*, 124 Mich. App. at 770. In fact, defendant's grandmother, Fay Carter, testified that Tia "said she couldn't" be a witness at trial, directly undermining defendant's claim that she would have testified if called by defense counsel. In addition, defendant has failed to demonstrate that defense counsel's failure to call these witnesses deprived defendant of a substantial defense. *Russell*, 297 Mich. App. at 716. The purported testimony of Stewart, Tia, or Hicks most likely would not have made a difference in the outcome of defendant's trial. *Hyland*, 212 Mich. App. at 710. Even if Stewart, defendant's girlfriend, had testified that defendant did not have her vehicle that night,[9] this would not outweigh the substantial evidence that placed defendant at the home on Montrose Street on July 28, 2015. Douglas testified that it was defendant who was the perpetrator. We also note that, on the record, defense counsel, in stating that she would not be calling Stewart, clarified for the court that Stewart was not an alibi witness.

> In addition, Tia's purported testimony, that defendant had their children over the days in question, does not contradict Douglas's testimony that defendant was one of the men involved in these crimes.[10] Further, the purported testimony of Hicks most likely would not have made a difference in the outcome of defendant's trial. Carter testified that defendant was in her home in Westland on the night of July 28, 2015, to the morning of July 29, 2015. Testimony of Hicks (Carter's daughter) to the same accord would have been cumulative, and the jury still convicted defendant despite Carter's being defendant's alibi.[11] Defendant has not demonstrated that he was denied the effective assistance of counsel in conjunction with the absence of these witnesses.

Defendant argues that defense counsel failed to investigate his case, which led to the errors of failing to call additional witnesses or object to evidence. "A defendant is entitled to have his counsel prepare, investigate, and present all substantial defenses." *People v. Kelly*, 186 Mich. App. 524, 526 (1990). There is no evidence in the lower court record demonstrating that defense counsel failed to properly investigate defendant's case or an alibi defense. Defense counsel did present an alibi defense by offering the testimony of Carter that defendant was with her during the time that the crimes took place. Defendant claims that defense counsel did not interview Stewart, Tia, or Hicks, but this is not reflected in the lower court record.[12]

—

[8] Defendant filed in this Court an affidavit from Stewart with his motion to remand. However, Stewart's affidavit was not included in the lower court record and this Court denied the motion to remand, and therefore we will not consider the affidavit. *People v. Watkins*, 247 Mich. App. 14, 31 (2001), aff'd 468 Mich. 233 (2003).

[9] Defendant also claims that Stewart would have testified that Douglas's television would not have fit in her car, but we note that the affidavit on which defendant relies does not discuss this.

[10] Nor is it outcome-determine that, according to defendant, Tia would have testified that neither Douglas nor her boyfriend informed Tia about the robbery. Defendant also states, "Further Ms. Mack would have testified that she did not provide information to Ms. Douglas to assist the Detroit Police in the identification of defendant." Defendant does not explain the significance of this purported testimony.

[11] In addition, as noted infra, defendant has not [incomplete footnote in original]

[12] We note that Stewart, in fact, was included on defendant's witness list, thereby indicating that defense counsel did at least consider calling her as a witness at some point.

*Dye*, 2017 WL 6390062, at *6-7.

As an initial matter Petitioner asserts that the state court decision is not entitled to AEDPA deference because it did not allow Petitioner to supplement the record with the missing witnesses' testimony at an evidentiary hearing. The Sixth Circuit held that a state court adjudication of an ineffective assistance of counsel without an evidentiary hearing nevertheless qualifies as a merits adjudication, and that it is subject to review under §2254(d). See *Ballinger v. Prelesnik*, 709 F.3d

12

558, 562 (6th Cir. 2013)("While allowing a petitioner to supplement an otherwise sparse trial court record may be appealing, especially where he diligently sought to do so in state court, the plain language of *Pinholster* and *Harrington* precludes it.")

Turning to the state court adjudication of the claim, the Court finds that it was not unreasonable for the state court to conclude that Petitioner did not demonstrate his counsel was ineffective for failing to call the three witnesses.

With respect to the failure to call Ashanti Stewart, her April 9, 2017, affidavit asserts that she dropped her son and Petitioner off at his grandmother's house on July 27, 2015, to celebrate the child's third birthday. (ECF 1-1, PageID.125-127.) On July 31, she picked up Petitioner and his three kids. Stewart states that from July 27 to July 31, Petitioner did not use her Silver Solara which was in her possession the whole time, and to her knowledge he was in Westland with his children and grandmother. (Id.)

Stewart did not claim to be with Petitioner at the time of the crime. She had dropped him off at his grandmother's house on the 27th. This allegation expands the alibi provided by Petitioner's grandmother at trial, who testified that Petitioner arrived on the 28th. Stewart was not with Petitioner during the relevant time period, so she was not an alibi witness herself. The purported value of Stewart to Petitioner's defense is her claim that she was in possession of her Silver Solara at the time of the robbery, and therefore the victim's testimony that she saw Petitioner put the television in his girlfriend's car was incorrect.[1] The allegation that Stewart had her Solara at the time of the crime contradicts the victim's testimony identifying the vehicle used during the

---

[1] It is worth noting that the victim's boyfriend was Tia Mack's brother, not Stewart's brother. Petitioner had children with both Mack and Stewart. At the time of the offense, it appears Petitioner was romantically involved with Stewart.

robbery as belonging to Stewart, and therefore it could have been used to call into question the reliability and accuracy of the victim's account of the incident.

On the other side of the ledger, however, is the uncontroverted fact that the victim knew Petitioner. She referred to him as "David" throughout trial. She testified that she recognized him "instantly" on the night of the robbery, from the time "he opened up his mouth and said, 'where is Gee at?'" (Id., PageID.529.) He had just been to her house earlier that day looking for Gee. (Id., PageID.530.) This was not a case of stranger identification, and in light of the victim's strong identification testimony, the Michigan Court of Appeals found that testimony from Stewart that Petitioner did not have access to her car on the night of the robbery "most likely would not have made a difference in the outcome of defendant's trial." *Dye*, 2017 WL 6390062, at *6.

This conclusion was reasonable. As indicated, the central challenge for the defense was to explain why the victim's identification of Petitioner—a man she knew—was wrong. Defense counsel came up with a reasonably competent defense theory to explain how the victim could have been mistaken. She began by arguing that on the face of things it was implausible that if Petitioner was one of the perpetrators, then he would not have attempted to hide his identity or threaten the victim against going to the police. (ECF 9-7, PageID.170-172.) To convince the jury that the victim was mistaken about Petitioner's identity, defense counsel leaned on the victim's testimony that she saw Petitioner load her television into the silver Solara, which she recognized as Petitioner's girlfriend's car. (Id., PageID.172-173). Defense counsel suggested that when the victim saw a silver vehicle, she mistakenly believed it was the Solara, and it led her to mistakenly believe that Petitioner (the man she associated with a silver Solara) was one of the perpetrators.

Defense counsel reasoned that the victim surely was mistaken about the vehicle being the Solara because that vehicle was too small to hold the large television that was stolen:

14

> [The victim] claims that she thought it was a two door Toyota, a Solara, and she thought she knew -- she told you that Mr. Dye's girlfriend has a two door Toyota. And she also told you, ladies and gentlemen, that she saw this guy carry this TV -- Can you put that up on the screen, please? . . . Do you really think, ladies and gentlemen, using your common sense that you can get that size TV in the backseat of a two door Toyota?  Do you really believe that? So you've got to question did this really happen? Or was there a larger silver vehicle out there? And she just assumed that seeing that silver vehicle that it was David's vehicle – David's girlfriend's vehicle. We know that that size TV will not fit into the backseat of a two door Toyota.  So clearly that's evidence that the vehicle outside was a larger vehicle. It could have been silver like she said, but it was clearly a larger vehicle. That's the evidence in this case, ladies and gentlemen.

(Id., PageID.172-173).

If the Solara were a third defendant standing trial, this was an excellent defense. And Stewart's missing alibi testimony *for the Solara* might have tipped the scales and won an acquittal for the Solara. But with respect to Petitioner himself, all Stewart's testimony would have done was provide further evidence that the Solara was not the silver car the victim saw the perpetrators use. That might have aided the defense somewhat in that it undermined the accuracy of one of the victim's observations. But contrary to defense counsel's argument, the victim did not identify Petitioner based on the vehicle. She testified that she recognized Petitioner immediately before she even saw the vehicle – when Petitioner first asked if her boyfriend was there, as he had done earlier that day.

If, as defense counsel argued, the large television could not have fit into a Solara, it is probable that the jury believed the victim's identification testimony of Petitioner being one of the perpetrators despite her being wrong about the vehicle. It is easy to see why. The victim interacted with the undisguised perpetrators over the course of some minutes inside her home. She knew Petitioner was one of them because he was a person she already knew, and he had just come over to her home unannounced earlier that day looking for Gee. In contrast to her opportunity to observe and interact with the perpetrators, the victim only briefly observed the vehicle parked outside at

night while the man with the gun was having her unlock her phone for him. Stewart's testimony would only have cast further doubt on the victim's testimony that the Solara was the vehicle used during the crime, but it would not have created a reasonable probability of a more favorable trial outcome because the victim's identification of Petitioner—contrary to defense counsel's argument—is something that occurred independently of her identification of the vehicle.

Moreover, an additional detail of Stewart's proposed testimony would have hurt rather than helped Petitioner's defense. Unlike Petitioner's grandmother, who testified that Petitioner arrived at her house on the 28th, Stewart says that she dropped Petitioner off at his grandmother's house on the 27th. This expansion of Petitioner's alibi would have presented a significant additional problem for a mistaken identification defense. The victim testified that Petitioner came over to her home on the afternoon of the 28th looking for Gee. That testimony was arguably consistent with Petitioner having gone over to his grandmother's later on the 28th. But if Stewart is right, then Petitioner would have had to explain how the victim not only misidentified him during the robbery, but how she also misidentified him when he arrived at her home earlier on the 28th looking for Gee, when he was at his grandmother's from the 27th on. It is one thing to say the victim made a mistake in the middle of the night during a stressful, chaotic encounter, but it is quite another to say she made the exact same mistaken identification of someone she knew during the earlier relatively benign daytime encounter.

As Stewart's testimony provided an excellent alibi for her Solara but not for Petitioner himself, who easily could have used some other silver-colored car to commit the crime, and because her testimony would have expanded his alibi's time-frame to include an encounter during which the victim was less likely to misidentify Petitioner, it was reasonable for the state court to

conclude that Petitioner failed to demonstrate that his counsel was ineffective for failing to call Stewart as a defense witness.

The analysis is simpler with respect to the other two uncalled witnesses. Petitioner claims that Tia Mack would have testified that at some unspecified date Petitioner and his grandmother picked up his other two children in his grandmother's car to take them to a birthday party. (ECF 1, PageID.90-91.) And he asserts that April Hicks, his aunt, was with him at his grandmother's house during the relevant time frame. (ECF No. 1, PageID.96.)

The Michigan Court of Appeals reasonably rejected the claim that counsel was ineffective for failing to call these two witnesses because Petitioner never submitted affidavits or proffered any other evidence that they would have testified favorably to the defense. See *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007); *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005). Unlike Stewart, neither Mack nor Hicks executed affidavits. Petitioner's claims with respect to these two witnesses is supported only by his own assertions. Such unsupported claims may be summarily dismissed by a reviewing court. See *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). The Michigan Court of Appeals therefore reasonably rejected the claim that defense counsel was ineffective for failing to call Mack and Hicks.

## 2. Failure to Challenge Juror

Petitioner's fourth claim argues that his counsel was ineffective for failing to challenge a juror for cause based on her responses during jury selection. The Michigan Court of Appeals rejected the claim as follows:

> During voir dire, Juror 3 answered the trial judge's questions regarding personal bias as follows:
>
> [Juror 3]: So you said he was charged with was it possession of an illegal firearm because he was convicted previously of a firearm?

The Court: Well, that's the charge in the case.

[Juror 3]: So maybe the fact that he was convicted previously might influence how I feel about his crime now; if he did it, of course.

The Court: But would you be able to like listen to the evidence on that charge and see if it's [sic] if the prosecutor has been able to meet their burden of proof on that one?

[Juror 3]: Possibly, but I also had—

The Court: Because they would have to prove the elements of the crime. Each of the elements have [sic] to be proved beyond a reasonable doubt.

[Juror 3]:  Possible [sic] I supposed then.

Juror 3 then said that her uncle's home was burglarized five or six years prior, but she would not hold that against the defendant. Significantly, she said, "I wouldn't put an innocent man away." She stated that if the prosecution proved the elements of the crimes, she would follow the law.

*        *        *

Under the circumstances of this case, defendant's argument that he was denied the effective assistance of counsel when defense counsel failed to dismiss or challenge Juror 3 as a juror is without merit. At first, Juror 3 expressed concern that the fact that defendant was previously convicted might influence her decision regarding the current charges. However, then Juror 3 adequately asserted that she would be able to be impartial. Defendant has not presented evidence to rebut Juror 3's assertions that she could be impartial. Therefore, defendant has not established that Juror 3 was partial or that her impartiality was in reasonable doubt. *Miller*, 482 Mich. at 550.

*Dye*, 2017 WL 6390062, at *7-8.

This decision was not objectively unreasonable. To maintain a claim that a biased juror

prejudiced him for purposes of maintaining an ineffective assistance of counsel claim, a habeas

petitioner must show that the juror was actually biased. See *Hughes v. United States*, 258 F.3d 453,

458 (6th Cir. 2001); see also *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001)(when a claim of

ineffective assistance of counsel is founded on a claim that counsel failed to strike a biased juror,

the defendant must show that the juror was actually biased against him). Counsel is not ineffective in failing to challenge a juror for cause when a juror indicates that she can be fair and impartial. See *Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 861 (E.D. Mich. 2009). Here, despite the initial exchange with the juror, the juror ultimately stated that if "they were able to prove beyond a reasonable doubt . . . . I wouldn't put an innocent man away," and that she would follow the law. (ECF No. 9-6, PageID.193.) Petitioner has not shown that the juror was actually biased. In light of the totality of the juror's remarks, it was not objectively unreasonable for the state court to reject this claim.

### 3. Failure to Object to Admission of Photograph

Petitioner's fifth claim asserts that his counsel was ineffective for failing to challenge the admission of a photograph of the victim's home that depicted the television before it was stolen. The Michigan Court of Appeals found that the photograph was properly admitted under state evidentiary law:

> The photograph was properly authenticated pursuant to MRE 901(b)(1) because Douglas testified that the television in the photograph was her television that defendant took from her home on Montrose Street. Thus, any objection defense counsel would have made to the admission of the photograph would have been meritless because it was properly authenticated, and attorneys are not required to assert meritless positions. *People v. Ericksen*, 288 Mich. App. 192, 201 (2010). Defendant was not denied effective assistance of counsel in this regard.

*Dye*, 2017 WL 6390062, at *8.

The state court's decision that the photograph was properly admitted under state law is binding on this court. See *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Counsel does not perform deficiently or prejudice his client by failing to raise futile objections. *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000)(citing *Strickland*, 466 U.S. at 687-96). This claim is therefore without merit.

4. Cumulative Error

Petitioner's final claim asserts that his trial counsel's errors, when taken together, entitle him to habeas relief. Because the individual claims of ineffectiveness alleged by Petitioner are without merit, Petitioner cannot show that the cumulative errors of his counsel amounted to ineffective assistance of counsel. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Alder v. Burt*, 240 F. Supp. 2d 651, 675 (E.D. Mich. 2003).

As none of Petitioner's habeas claims merit relief, the petition will be denied.

### IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief with respect to all but one of his claims because they are devoid of merit. The Court finds that reasonable jurists could debate whether Petitioner has demonstrated entitlement to relief with respect to his claim that his counsel was ineffective for failing to call Ashanti Stewart as a witness to show that Petitioner did not have access to her car at the time of the offense given the victim's testimony that she observed Petitioner use the car during the robbery. A reasonable jurist might find that undermining the victim's observation as to the

vehicle used would have been enough, with reasonable probability, to have tipped the scales in favor of the defense where the prosecutor's case rested entirely on her recollection of the incident.

Finally, Petitioner is granted permission to appeal in forma pauperis because an appeal would not be frivolous. 28 U.S.C. § 1915(a)(3).

### V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **GRANTS** a certificate of appealability only with respect to Petitioner's claim that his counsel was ineffective for failing to call Ashanti Stewart, and 3) **GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

s/ Nancy G. Edmunds
Hon. Nancy G. Edmunds
United States District Judge

Dated:  September 8, 2020